**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**VENESIA ATTO,**                                      Case No.:

  Plaintiff,                                           **Honorable**

    v.

**CITIBANK, N.A.,**

      Defendant(s).
_____

CHAMI LAW, PLLC
Tarek N. Chami (P76407)
16030 Michigan Ave. STE 215
Dearborn, MI 48126
(P): (313) 444-5029
(F): (888) 428-7911
(E): tarek@chamilawpllc.com
Attorney for Plaintiff

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Venesia Atto ("Plaintiff"), through her attorneys, alleges the following against Defendant, Citibank, N.A. ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use

of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

## JURISDICTION AND VENUE

2. Plaintiff resides in the State of Michigan, and therefore, personal jurisdiction is established.

3. Jurisdiction of this court arises under 47 U.S.C. § 227 et seq. and 28 U.S.C. 1331.

4. Venue is proper pursuant to *28 U.S.C. 1391(b)(2)*.

## PARTIES

5. Plaintiff is a natural person residing in Sterling Heights, Macomb County, Michigan.

6. Defendant is a creditor engaged in the business of giving consumer loans with its principal place of business located in New York, New York. Defendant can be served with process at 701 East 60th Street North, Sioux Falls, SD 57104.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8. Defendant is attempting to collect a debt from Plaintiff.

9. In or around March 24, 2017, Defendant began placing calls to Plaintiff's cellular telephone number (586) 222-1212 in an attempt to collect an alleged debt.

10. A number of the incoming calls came from (800) 733-1116; (859) 309-5128; and (954) 236-6083; upon information and belief, these numbers are owned or operated by Defendant.

11. On or about March 24, 2017 at 8:24 a.m., Ms. Atto answered a call from Defendant, on her cellular telephone, originating from (800) 733-1116. Plaintiff heard a pause before the representative began to speak, indicating the use of an Automated Telephone Dialing System.

12. Plaintiff spoke with a representative of Defendants and was informed that it was attempting to collect a debt. During the call, Ms. Atto asked for calls to her cell phone to cease.

13. Despite Plaintiff having unequivocally revoking consent to be contacted, Defendant continued to call Plaintiff on her cellular phone.

14. On or about July 30, 2017, Ms. Atto answered another call from Defendant, on her cellular telephone, originating from (954) 236-6083 and spoke with a representative named Tiffany. Plaintiff heard a pause before the representative began to speak, indicating the use of an Automated Telephone Dialing System.

15. Ms. Atto asked for a second time, for all calls to her cell phone to cease.

16. Despite Plaintiff having unequivocally revoking consent to be contacted, Defendant continued to call Plaintiff on her cellular phone.

17. Between March 24, 2017 and August 11, 2017, Ms. Atto was called no less than seventy-eight (78) times after having unequivocally revoked consent to be contacted on her cellular phone.

18. Defendant would call Plaintiff on her cellular telephone one (1) to four (4) times a day.

19. The Federal Communications Commission ("FCC") noted in its 2003 TCPA Order that a predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." 2003 TCPA Order, 18 FCC Rcd at 14091, para. 131.

20. The FCC further explained that the "principal feature of predictive dialing software is a timing function, not number storage or generation." Id.

21. Finally, the FCC stated that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." Id. at 14091-92, paras. 132-33.

22. Defendant consistently called Plaintiff around the same time every day, indicating the use of a predictive dialer.

COMPLAINT AND DEMAND FOR JURY TRIAL
- 4 -

23. For example, Defendant called Plaintiff at 2:40 p.m. (April 23, 2017), 2:43 p.m. (May 8, 2017), 2:43 p.m. (May 9, 2017), 2:38 p.m. (May 16, 2017), and 2:37 p.m. (May 18, 2017).

24. Most of the incessant calls placed by Defendant were made while Ms. Atto was at work and school.

25. While at work and school, Ms. Atto has her cellular phone in her possession at all times, which made the harassing calls disruptive to her work and school day.

26. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, emotional and mental pain and anguish.

## COUNT I
### (Violations of the TCPA, 47 U.S.C. § 227)

27. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

28. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an

artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

b. Within four years prior to the filing of this action, on multiple occasions Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowingly and/or willfully violated the TCPA.

29. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Venesia Atto, respectfully requests judgment be entered against Defendant, Citibank, N.A., for the following:

A. Actual damages pursuant to 47 U.S.C. § 227(b)(3)(B); or

B. Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B); and/or

C. Punitive damages pursuant to 47 U.S.C. § 227(b)(3)(C);

D. Any pre-judgment and post-judgment interest as may be allowed under the law; and

E. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Ms. Atto hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED,

Dated: October 13, 2017

**CHAMI LAW, PLLC**
By: */s/ Tarek Chami*
Tarek N. Chami (P76407)
tarek@chamilawpllc.com
16030 Michigan Ave. STE 215
Dearborn, MI 48126
Attorneys for Plaintiff,
Venesia Atto